IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MILLARD E. PRICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civ. No. 24-306-CFC |
| | ) |
| TERRA TAYLOR, *et al.*, | ) |
| | ) |
| Defendants. | ) |

Millard E. Price, Wilmington, Delaware – *Pro se* Plaintiff

Lorin Huerta, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware – Counsel for Defendants Terra Taylor, Detective Monroe Hudson, Brian Emig, and Alonzo Hicks

## MEMORANDUM OPINION

December 19, 2024
Wilmington, Delaware

**CONNOLLY, Chief Judge:**

On March 7, 2024, Defendants Terra Taylor, Detective Monroe Hudson, Brian Emig, and Alonzo Hicks removed this action from the Superior Court of Delaware to this Court. (D.I. 1; *see also* D.I. 1-3, 1-5.) The Complaint, in which Plaintiff Millard E. Price asserts a civil rights cause of action *pro se* against Defendants, is the operative pleading. (D.I. 1-1.) Now pending before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint. (D.I. 4.) Also pending before the Court are Plaintiff's motion for a default judgment (D.I. 6) and Plaintiff's motion to strike his original response to Defendants' Motion to Dismiss (D.I. 10).

## I. BACKGROUND

According to the Complaint, Plaintiff is an inmate at the Howard R. Young Correctional Institution (HRYCI) in Wilmington, Delaware. (D.I. 1-1 at 2.) HRYCI is run by the Delaware Department of Corrections (DDOC). https://doc.delaware.gov/views/hryci.blade.shtml (last visited on December 19, 2024). On or about September 12, 2023, Plaintiff wrote a letter to the HRCYI Business Office and requested a six-month certified account statement. (*Id.* at 6.) Plaintiff requested the account statement so that he could apply to proceed *in forma pauperis* before this Court in a separate *pro se* matter. (*Id.*)

The next day, the Business Office responded to Plaintiff's request by returning his request, along with a note to inform Plaintiff that one-month account statements

are provided monthly free of charge. (*Id.* at 7.) Two days after receiving this response, Plaintiff wrote a second letter to the Business Office, again requesting a six-month certified account statement, but this time, as soon as possible. (*Id.*) The same day, the Business Office responded, acknowledging that Plaintiff's court proceedings were time sensitive, and stating that a six-month certified account statement could not be provided without copies of Plaintiff's court papers, per a longstanding rule of the Business Office. (*Id.*)

Three days later, Plaintiff submitted an Administrative Grievance regarding the Business Office's requiring him to "submit his legal pleadings for scrutiny" before providing a six-month certified account statement. (*Id.* at 8.) Thereafter, Defendant Hicks, the Chairperson of the HRYCI Grievance Board, summoned Plaintiff to discuss the Grievance. (*Id.*) Plaintiff explained to Defendant Hicks that the Business Office was impeding upon Plaintiff's access to the courts, in violation of his Sixth and Fourteenth Amendment rights. (*Id.*) Plaintiff further explained that he believed any rule requiring surrender of his legal pleadings to the Business Office to be inappropriate. (*Id.*) Defendant Hicks indicated that he would speak with the Business Office about the situation. (*Id.* at 8-9.)

The Grievance was subsequently returned to Plaintiff unprocessed, and the reasons stated were that the Grievance was a "request" and that the grievance process

could not be utilized to challenge a policy or procedure. (*Id.* at 9.) Plaintiff felt that this was an arbitrary denial of his Grievance by Defendant Hicks. (*Id.*)

On or about September 20, 2023, Plaintiff filed a civil rights complaint with this Court. (*Id.* at 10.) Plaintiff alleges that this complaint was dismissed for failure to submit a six-month certified account statement.[1] (*Id.*) According to Plaintiff, the Court issued an Order demanding the six-month certified account statement. (*Id.*) Plaintiff submitted a third request to the Business Office, and this time, Plaintiff included a copy of the Court's Order. (*Id.*) Upon receipt of this third request, the Business Office provided Plaintiff with the account statement as requested. (*Id.* at 10-11.)

Plaintiff seeks in the Complaint an Order from the Court that: "strik[es] down the DDOC policy, procedure, rule or practice requiring a prisoner submit a copy of his legal pleadings to the business office for scrutiny for the purpose of detaining a 6-month certified account statement which the federal and state courts require of all prisoners seeking judicial review as a pauper," (*id.* 11); "[p]ermanently enjoin[s] the DDOC from implementing [any] rule, policy or procedure that would require a

---

[1] The Court notes that the Complaint and subsequent filings by Plaintiff provide no case number for this 2023 complaint. Additionally, he Court takes judicial notice of a civil matter initiated by Plaintiff on September 27, 2023—*Price v. Centurion, et al.*, 23-CV-1062-CFC—for which a six-month certified account statement was received on October 30, 2023, and authorization to proceed *in forma pauperis* was granted the next day.

3

prisoner submit his legal work in exchange for any document required by federal or state judiciary," (*id.* 11-12); "[p]ermanently enjoin[s] the DDOC from implementing any rule, policy, or procedure that would impede a prisoner's access to the courts," (*id.* at 12); "strik[es] down the BOP Policy 4.4 reasons for returning a prisoner's grievance unprocessed because it is a "Request," or for any "other" reason not specifically set forth in Policy 4.4 excepting the two reasons stated herein," (*id.*); "[d]irect[s] Defendants to conduct an independent investigation into the arbitrary enforcement of Policy 4.4, and to specifically determine whether the Policy provides due process," (*id.*); "[r]etain[s] jurisdiction over this case until Defendants have fully complied with the Orders of the Court," (*id.*); and affords him "any other relief as the Court may deem just and proper," (*id.*).

## II. LEGAL STANDARDS

In reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.

A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to

the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The Court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

As a preliminary matter, the Court will grant Plaintiff's motion to strike his original response to Defendants' motion to dismiss (D.I. 10), and the Court will consider Plaintiff's Supplemental Answer to Defendant's Motion to Dismiss (D.I. 11) as Plaintiff's response. Likewise, the Court will view Defendants' Second Reply in Support of Their Motion to Dismiss the Complaint (D.I. 12) as Defendants' reply to Plaintiff's response.

The Court now turns to Plaintiff's Complaint. (D.I. 1-1.) Upon review, and with the benefit of adversarial briefing, the Court concludes that the Complaint fails to state a claim upon which relief can be granted. Accordingly, Federal Rule of Civil Procedure 12(b)(6) warrants dismissal of this action.

The Eleventh Amendment protects states and their agencies and departments from suit in federal court, regardless of the kind of relief sought. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam)).

The State of Delaware has not waived its sovereign immunity under the Eleventh Amendment. *See Jones v. Att'y Gen. of Delaware*, 737 F. App'x 642, 643 (3d Cir. 2018) (per curiam). Although Congress can abrogate a state's sovereign

6

immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *See Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. Jan. 11, 2007). Further, a state agency "is not a person" subject to claims under 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Although the DDOC was not named as a Defendant to this action, the Complaint seeks relief in the form of permanent injunctions against the DDOC and other orders striking down certain DDOC policies, procedures, rules, or practices. (*Id.* at 11-12.) Even if the DDOC were a named Defendant, Eleventh Amendment immunity for departments of the State of Delaware would prevent Plaintiff from seeking relief in the form of injunction or other orders against the DDOC by way of this § 1983 action. *See Evans v. Ford*, 2004 WL 2009362, *4 (D. Del. Aug. 25, 2004) (dismissing claim against DDOC on Eleventh Amendment immunity grounds). As such, the Complaint fails to state a claim upon which relief can be granted regarding the DDOC.

The Complaint also seeks relief in the form of an order "direct[ing] Defendants to conduct an independent investigation into the arbitrary enforcement of Policy 4.4, and to specifically determine whether the Policy provides due process." (D.I. 1-1 at 12.) All Defendants named to this action have been sued in their official capacity as DDOC employees. (*See* D.I. 1-1 at 4-5; *see also* D.I. 4 at 3-4.) "Under the *Ex parte Young* exception, Eleventh Amendment immunity gives

7

way so that a state official may, under certain conditions, be sued in federal court in his or her official capacity by a citizen of another state for injunctive or declaratory relief." *Merritts v. Richards*, 62 F.4th 764, 771 (3d Cir. 2023).

Regarding Defendants Taylor, Hudson, and Emig, the Court does not reach the question of whether the *Ex parte Young* exception applies because, as Defendants assert, the Complaint does not allege any personal involvement by these three Defendants. (*See* D.I. 1-1 at 6-11; *see also* D.I. 4 at 6-7.) A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved;" personal involvement in the alleged wrong is required. *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). Accordingly, Defendants Taylor, Hudson, and Emig will be dismissed from this action on the basis of failure to state a claim.

Finally, regarding Defendant Hicks, the Court again does not reach the question of whether the *Ex parte Young* exception applies because the specific allegations against Hicks involve the inmate grievance process. (*See* D.I. 1-1 at 8-9.) Likewise, the specific relief sought—"Direct Defendants to conduct an independent investigation into the arbitrary enforcement of Policy 4.4"—also pertains to the inmate grievance process. (*Id.* at 12.) Inmates do not have a "free-standing constitutional right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (citing *Flick v. Alba*, 932

8

F.2d 728, 729 (8th Cir. 1991). Accordingly, Defendant Hicks must also be dismissed from this action on the basis of failure to state a claim upon which relief can be granted.

In an abundance of caution, Plaintiff will be given an opportunity to file an Amended Complaint remedying the deficiencies discussed above. If Plaintiff chooses to file an Amended Complaint, it will wholly replace the Complaint (D.I. 1-1) and Plaintiff may not add any new claims; Plaintiff may only amend the allegations in the Complaint to remedy the above-discussed deficiencies. Plaintiff should be advised that filing an Amended Complaint that fails to remedy the above-discussed deficiencies will likely result in dismissal with prejudice. Alternatively, if Plaintiff chooses not to timely file an Amended Complaint, and instead takes no further action, the Complaint will be dismissed without prejudice and this case will be closed.

## IV. CONCLUSION

For the reasons discussed above, the Court will grant Defendants' Motion to Dismiss (D.I. 4) and give Plaintiff an opportunity to amend the Complaint (D.I. 1-1) as set forth above. Plaintiff's motion to strike his original response to Defendants' motion to dismiss (D.I. 10) will also be granted. Plaintiff's motion for a default judgment (D.I. 6) will be denied without prejudice.